CASE NO. 22-14205-DD

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

---

**KEYVON SELLERS,**

Defendant/Appellant

v.

**JERRY NELSON, et al.**

Plaintiffs/Appellees

---

ON IMMEDIATE REVIEW OF AN INTERLOCUTORY ORDER
OF THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA

---

# BRIEF OF APPELLEES

---

CRAIG T. JONES
Ga. Bar No. 399476
Craig T. Jones, P.C.
Post Office Box 129
Washington, Georgia 30673
(678) 643-0062
craigthomasjones@outlook.com

*Attorney for Appellees*

1

No. 22-14205-DD
*Sellers v. Nelson*
C-1 of 2

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to 11th Cir. R. 26.1-1(a)(2), the following is a complete list of the trial judge(s), all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the particular case or appeal, including subsidiaries, conglomerates, affiliates and parent corporations, including any publicly held company that owns 10% or more of the party's stock, and any other identifiable legal entities related to a party:

Cashbaugh, Tyler C. – Attorney for Appellant

Clark, James C. Jr. – Attorney for Appellant

Columbus-Muscogee County Consolidated Government (financial interest)

Dushane, Michelle, as surviving spouse of Eddie Nelson, Jr. – Appellee

Fay, Clifton C. – Attorney for Appellant

Gristina, Thomas F. – Attorney for Appellant

Jones, Craig T. and Craig T. Jones, P.C. – Attorney for Appellees

Land, Hon. Clay D. (trial judge)

Muscogee County Sheriff's Office (financial interest)

Nelson, Jerry, as administrator of the Estate of Eddie Nelson, Jr. – Appellee

2

No. 22-14205-DD
*Sellers v. Nelson*
C-1 of 2

Page, Scrantom, Sprouse, Tucker & Ford, P.C. – Attorney for Appellant

Sellers, Keyvon – Appellant

Sheftall, Lucy T. – Attorney for Appellant

**<u>NOTE</u>:      The following individuals, entities, and attorneys do not have a direct financial interest in this appeal but remain involved in the case still pending against co-Defendants in the trial court that is not part of this appeal:**

Braxton, Kimberly – Defendant

CorrectHealth, LLC. – Defendant

CorrectHealth Muscogee, LLC – Defendant

Currie, Alison L. – Attorney for Defendants

Lavender, Thomas E., III – Attorney for Defendants

Respectfully submitted this 22nd day of February, 2023.

*/s/ Craig T. Jones*
CRAIG T. JONES
Georgia Bar No. 399476
Counsel for Appellees

CRAIG T. JONES, P.C.
Post Office Box 129
Washington, Georgia 30673
(678) 643-0062
craigthomasjones@outlook.com

# **TABLE OF CONTENTS**

Certificate of Interested Parties and Corporate Disclosure Statement……………..2

Table of Contents………………………………………………………………..4

Table of Authorities………………………………………………………….......5

Statement Regarding Oral Argument…………………………………………………6

Statement of the Issue……………………………………………………….…..........6

Statement of the Case……………………………………………………………7

      Nature of Case……………………………………………………………..7

      Course of Proceedings and Dispositions in the Court Below……………......7

      Statement of the Facts……………………………………………….......9

      Standard of Review………………………………………………………16

Summary of Argument…………………………………………………….....16

Argument and Citation of Authority……..……………………………………..19

      A.    Reasonable jurors could find that Officer Sellers
            was deliberately indifferent to a known risk of harm………………19

      B.    Because Sellers' conduct violated clearly established
            constitutional law, he is not entitled to qualified immunity…………24

Conclusion………………………………………………………………...29

Certificate of Compliance…………………………………………………………30

Certificate of Service…………………………………………………………...30

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Anderson v. Creighton*, 483 U.S. 635 (1987)……………………………………..26

*Bowen v. Warden,* 826 F.3d 1312 (11th Cir. 2016)………………………………22

*Farmer v. Brennan*, 511 U.S. 825 (1994)…………………………………....19-21, 26

*Gates v. Collier,* 501 F.2d 1291 (5th Cir. 1974)…………………………,………22

*Hartley v. Parnell*, 193 F.3d 1263 (11th Cir. 1999)………………………………16

*Hill v. Dekalb Regional Youth Detention Ctr.,* 40 F. 3d 1176 (11th Cir. 1994)…….20

*Hinson v. Edmond,* 192 F.3d 1342 (11th Cir. 1999),
    *amended by* 205 F.3d 1264 (11th Cir. 2000)………………………………..7

*Hope v. Pelzer*, 536 U.S. 730 (2002)…………………………...…………..22, 24, 26-27

*Johnson v. Breeden,* 280 F. 3d 1308 (11th Cir. 2002)……………………………28

*Johnson v. Jones*, 515 U.S. 304 (1995)……………………………………16, 24

*Lancaster v. Monroe County*, 116 F. 3d 1419 (11th Cir. 1997)……………………20

*Marsh v. Butler County, Ala.*, 268 F. 3d 1014 (11th Cir. 2001) (*en banc*)……20-22

*McElligot v. Foley*, 182 F. 3d 1248 (11th Cir. 1999)…………………………20-21

*Mitchell v. Forsyth*, 472 U.S. 511 (1985)……………………………………...16-24

*Mullinex v. Luna*, 577 U.S. ___, 136 S. Ct. 305 (2015)………………………27-28

*Pearson v. Callahan*, 555 U.S. 223 (2009)………………………………………25

*Richardson v. McKnight,* 521 U.S. 399 (1997)………………………….………7

*Saucier v. Katz*, 533 U.S. 194 (2001)…………………………………………25

*Tolan v. Cotton*, 572 U.S. 650 (2014)……………………………………………24

*Vinyard v. Wilson*, 311 F.3d 1340 (11th Cir. 2002)………………………………27

**CONSTITUTIONAL AND STATUTORY PROVISIONS**

Eighth Amendment……………………………...………………………20, 22, 27-28

Fourteenth Amendment………………………………….……7, 20, 23, 27-28

42 U.S.C. §1983……………………………………………………………………7

## STATEMENT REGARDING ORAL ARGUMENT

Appellees believe this is a straightforward matter of clearly established law that was correctly applied by the trial court, and oral argument is not necessary. However, counsel for Appellees will participate if oral argument is granted.

## STATEMENT OF THE ISSUE

Whether the trial court properly held that "it was clearly established before September 5, 2020 that jail officials have a duty to protect inmates from violence at the hands of other inmates and that officials can be held liable if they knew of a substantial risk of inmate-on-inmate violence but disregarded that risk and failed to take reasonable measures to minimize it," and that under Plaintiffs' version of the facts – where a jail booking officer knew that an incoming inmate "posed an unreasonable risk of harm to white detainees and that he should not be housed with white detainees, yet … informed no one of this risk," and thus "was completely indifferent to the known and substantial risk that by remaining silent, [the inmate] could be housed with a white detainee" and end up murdering him – the officer violated clearly established constitutional rights and is not entitled to qualified immunity. (R. 198 at 19).

## STATEMENT OF THE CASE

### Nature of Case

This is federal civil rights case alleging that a jail nurse[1] and booking officer were deliberately indifferent to the known serious risk of harm posed by a particular inmate to members of a particular race. The case is before the Court on an interlocutory appeal from the trial court's denial of qualified immunity on the booking officer's motion for summary judgment.

### Course of Proceedings and Disposition in the Court Below

On September 8, 2020, Plaintiffs filed a Complaint in the Middle District of Georgia against the Muscogee County sheriff and three supervisors responsible for overseeing the jail staff alleging violations of the Fourteenth Amendment under 42 U.S.C. §1983. (R. 1). The original Defendants, represented by the same counsel as Appellant herein, filed a motion to dismiss on September 15, 2020 (R. 10) which was denied on September 22, 2020 (R. 19). Over the course of the discovery period, which was extended several times due to the addition of new Defendants, the Complaint was amended five times to drop the original Defendants and add additional parties and claims as more information became known. (R. 22, 24, 66,

---

[1] As a private contractor, the nurse was not entitled to claim qualified immunity and did not assert it; thus she could not directly appeal the denial of summary judgment. *Richardson v. McKnight,* 521 U.S. 399 (1997); *Hinson v. Edmond,* 192 F.3d 1342 (11th Cir. 1999), *op. amended by* 205 F.3d 1264 (11th Cir. 2000).

106, 128). By the time the Fifth Amended Complaint was filed on November 9, 2021, there were seven remaining Defendants, two of which were jail officers employed by the sheriff and the other five were private medical and mental health providers under contract with the county. (R. 128). After the voluntary dismissal without prejudice of one of the jail officers on December 14, 2021, there were six Defendants left, and the only remaining officer in the case was Defendant/Appellant Keyvon Sellers. (R. 136).

Various summary judgment motions were filed by the parties on December 20, 2021 (R. 138), December 31, 2021 (R. 139), March 15, 2022 (R. 148), March 21, 2022 (R. 159), and April 20, 2022 (R. 171). The parties stipulated to the dismissal of one more Defendant (a mental health counselor) on May 2, 2022, leaving only four Defendants in the case to be addressed by the court's ruling on summary judgment. (R. 186, 187). Those four Defendants were Officer Sellers (Appellant herein), the contract medical provider (CorrectHealth), and two of its employees, nurses Kimberly Braxton and Angela Burrell. On December 5, 2022, the trial court entered an Order granting summary judgment as to Nurse Burrell but denying summary judgment as to Officer Sellers, Nurse Braxton, and Correct Health. (R. 198).

The only ruling that is pertinent to this appeal is the denial of summary judgment to Officer Sellers, who filed a notice of direct appeal on December 8,

2022. (R. 199). The sole basis for this appeal is the trial court's denial of Sellers'

claim of qualified immunity, while the claims against Defendants CorrectHealth

and Braxton (which are based on both federal and state law for which they have no

immunity defenses) are awaiting trial in the court below upon remand of the case

against Sellers.

## Statement of the Facts

On August 26, 2020, both Eddie Nelson and the cellmate who would murder

him, Jayvon Hatchett, were arrested for unrelated crimes and booked into the

Muscogee County jail. (R. 188-6). Nelson was charged with misdemeanor assault

and violation of probation for failing to update his registration as a sex offender,

while Hatchett was arrested for aggravated assault in connection with the random

stabbing of a clerk at an AutoZone store. (R. 188-7).

When Hatchett was arrested, he was first interviewed by investigators at the

Columbus Police Department, who prepared arrest paperwork charging him with

aggravated assault and possession of a weapon during the commission of a crime,

before having him transported to the county jail. During the transport, Hatchett

told the transport officer, Corporal Antonio Burgess, that he had become upset

after watching the news and decided he wanted to kill a white man. Because there

was nothing in Hatchett's arrest paperwork (called "the wagon" in jailer lingo)

about his crime being racially motivated since he did not tell anyone about it until

after the wagon was completed and he was en route to the jail, Corporal Burgess made sure that the jail staff was aware of it. (R. 151 at 40-43; R. 151-1 at 4).

The first person with whom Burgess made contact at the jail was Nurse Kimberly Braxton, a contract nurse employed by CorrectHealth who was doing Covid 19 prescreenings on all arriving detainees before they were taken to the booking area. The prescreening process, which consisted of questioning each detainee upon arrival to determine whether they had signs or symptoms of Covid, took place in a DUI intoximeter room just inside the jail entrance but before the reception area where inmates were placed against the wall and booked into the jail. This prescreening process was recorded by audio and video, which included all conversation between Corporal Burgess, Nurse Braxton, and Hatchett. (R. 188-3; R. 152 at 10-11, 34-36).

As Nurse Braxton performed the Covid screening on Hatchett, Corporal Burgess stood nearby and told Braxton about Hatchett's crime and the racial motivation for it. Burgess can be heard on the video telling Nurse Braxton the following:

> Listen to this young man's story, he went to the AutoZone and stabbed a white man just because of what's happening with all this police shooting stuff. Can you believe that? I'm surprised they didn't charge you with a hate crime. I'd have thrown the book at you man.

(R. 188-1). Braxton later confirmed that she was told this when interviewed by an

internal affairs investigator: "The officer told me what happened, and I asked him (Hatchett), why would you do that?  Because I had a good rapport the weekend before" (when she had screened Hatchett after a previous arrest four days earlier).  (R. 188-2).   Nurse Braxton also told the investigator that Hatchett "seemed a little different (mentally) from the last time."  (R. 188-3).

According to Braxton, Hatchett told her, "I'm just upset because somebody has to do something."  Braxton responded by saying, "Son, this ain't the way to do it.  You go to school and educate yourself and become a police officer or an attorney.  Hurting people ain't the way to do it".[2]  She also told Investigator Hill, "You could tell he wasn't all together there."[3]

Nurse Braxton went on to "put him down for a psych evaluation because of the nature of the crime and his temperament,"[4] but she did not document what she had been told by Hatchett and Sellers – nor did she tell anyone else at the jail what she had been told about Hatchett's racial motivation or why he had committed the crime.  She did not even tell her supervisor, Nurse Burrell, who would later do the full medical intake evaluation on Hatchett.  Burrell herself testified, over the vociferous objections of counsel, that she personally would have passed that

---

[2] (R. 188-4, electronic file labeled 190826_0016.MP3 audio at 1:13-1:30) (manually filed computer disk).

[3] (*Id.* at 2:01-2:03).

[4] (*Id.* at 2:24-2:36).

information along and felt that a nurse had a moral and professional obligation to do so.  (R. 172 at 83-84).

Nurse Hatchett was not the only member of the jail staff that Burgess and Hatchett spoke with about what Hatchett had done.  Immediately after the Covid screening, Corporal Burgess walked Hatchett up the hall to the booking area where the intake officer, Keyvon Sellers, began the admission process by searching Hatchett.  At Burgess's urging, Hatchett told Sellers, "I was watching the news and I decided I was gonna stab a white guy." But like Nurse Braxton before him, Sellers also failed to share that information with anyone else on staff or to document that conversation in any way.  (R. 188-5).

In short, Plaintiffs/Appellees contend that both Braxton and Sellers were deliberately indifferent to a known risk of serious harm because they were both told to their face – by a police officer as well as by the suspect himself – that they were admitting someone into the jail population who expressly stated that he wanted to kill a white person and had in fact just tried to do so.  Yet neither of them bothered to pass that information along to anyone else in a position to act upon it.

On August 27, 2020, Eddie Nelson was moved from holding and placed in a cell with Jayvon Hatchett and another white inmate.  For the next four days, the two white men shared a cell with Hatchett.  On the morning of August 31, 2020,

the other white man was moved to another cell, and the next morning, another black cellmate was moved. That did not change until September 4, 2020, when the other black inmate was moved from the cell, leaving Nelson and Hatchett alone. All total, Nelson and Hatchett were alone together for less than two days: for approximately 24 hours between August 31 and September 1, and then for a few more hours on September 4 until shortly after midnight when the murder occurred. (R. 159-3 at ¶¶17-21).

During the evening of September 4, 2020, Nelson complained to the medical staff about shortness of breath and said he had "Been having out of body experience for years, get [sic] where [he] can't breathe." The nurse took his vital signs, noting a heart rate of 116, and wrote that she would have mental health follow-up with him the next day. (R. 188-9). But before that could happen, a jail officer responding to a 1:35 AM disturbance arrived at Hatchett and Nelson's cell and observed the following:

> I looked in the cell and saw inmate Javon [sic] Hatchett on his knees with both of his hands around the neck of inmate Eddie Nelson. Inmate Hatchett, while on his knees was on inmate Nelson's left side. Inmate Nelson was lying on his back cover [sic] with blood and seemed to not be breathing. I told inmate Hatchett to 'get the fuck off him.' Inmate Hatchett turned while still having both hands on inmate Nelson's neck, looked at me and said, 'He put a hair in my sandwich.'

(R. 188-11 at 2). The officer called for help as Hatchett continued to strangle Nelson until backup arrived and Hatchett could be handcuffed. By then, Nelson

was no longer breathing and his mouth was full of blood. (R. 188-11 at 3). He was pronounced dead shortly thereafter.

Defendants suggest that Nelson was not killed because he was white but because he put a hair in Hatchett's sandwich, yet that ignores the obvious reality that both men were mentally unstable and that one of them – who had stabbed a white man days earlier and then told at least three people (Corporal Burgess,[5] Nurse Braxton, and Officer Sellers) that he *wanted* to kill a white man – either awoke from a nightmare at one o'clock in the morning or had a paranoid delusion that a white man had put a hair in his sandwich during a meal that was presumably many hours earlier.  That is hardly proof as a matter of law that the murder was not racially motivated.

It should also be noted that a psychiatric evaluation of Hatchett done later that day stated as follows:

> States he is here for aggravated assault. **Mentioned about his roommate talking about racial things.** Vague about the sequence of events occurred between the two. Later the incident occurred.

(R. 188-12) (emphasis added).   Despite Defendants' suggestion otherwise, Hatchett's mention of a conversation with his cellmate "about racial things" before

---

[5] While Burgess, the transport officer, also had knowledge of the threat posed by Hatchett, he properly performed his duties by making sure that the intake nurse and the booking officer were aware of it, so Plaintiffs voluntarily dropped him as a Defendant.

"the incident" certainly suggests that Hatchett's feelings about white people did not vanish into thin air during the nine days between his arrest and the killing of Eddie Nelson with his bare hands, which did not happen until after third inmate was moved out of their cell, leaving the two of them alone together. It is also noteworthy that shortly after the murder, the Jail Inmate Comment Page documents that "Inmate is to be kept alone, **especially from individuals of White race**." (R. 188-10) (emphasis added). If that fact was known just hours after Nelson's murder, jurors can infer that it was also known during the days leading up to it – during which time Hatchett's statements about wanting to kill a white person were all over the local news and a topic of conversation among the jail staff (except for those who were sued and/or deposed in this case, who all claim, coincidentally, to have known nothing about it).[6]

---

[6] Before they were named as Defendants, represented by counsel, and deposed, several jail employees told internal affairs investigators about how 'everybody' was talking about the AutoZone stabbing and Hatchett's desire to kill a white person, but those statements were vague as to the timing of that gossip in relation to the murder. However, Sellers himself repeatedly stated – despite the apparent efforts of internal affairs investigators to reshape his recollection in defense of their agency – that he heard such talk both before and after the murder. (R. 188-3 at 1; R. 188-8 at 18-22).

## STANDARD OF REVIEW

The standard of review on a denial of summary judgment is *de novo*. *See, e.g. Hartley v. Parnell*, 193 F.3d 1263, 1268 (11th Cir. 1999).  But where the appeal is from an interlocutory order denying qualified immunity under the collateral order doctrine, Appellees must show only that they can create a genuine issue of material fact as to whether there was a violation of clearly established constitutional law when the facts are viewed in the light most favorable to them. *See Mitchell v. Forsyth*, 472 U.S. 511 (1985); *Johnson v. Jones*, 515 U.S. 304 (1995).

## SUMMARY OF ARGUMENT

This case arises from a tragic incident in which a mentally unstable black prisoner who was in the Muscogee County jail for committing a racially motivated violent crime then proceeded to murder his white cellmate, who he accused of putting a hair in his sandwich).  The trial court having denied Defendant/Appellant's motion for summary judgment in an interlocutory order, the sole jurisdictional basis for the present appeal at this juncture is the collateral source doctrine which allows direct appeals from denials of qualified immunity. Accordingly, the only issue before the Court at this time is whether the trial court properly held that, when the facts are viewed in the light most favorable to Plaintiffs as required on a motion for summary judgment, Plaintiffs' version of the

facts – if true – would establish a violation of clearly established constitutional law that defeats Defendant/Appellant's claim to immunity as a matter of law.

The trial court has now ruled twice that the applicable law was clearly established. The first ruling was on a motion to dismiss filed by Appellant's counsel on behalf of the original Defendants alleging the factual insufficiency of the Complaint and claiming qualified immunity based on the facts as pled. (R. 19). The trial court ruled, in pertinent part, as follows:

> Defendants do not dispute that it was clearly established before September 5, 2020 that jail officials have a duty to protect inmates from violence at the hands of other inmates and that officials can be held liable if they knew of a substantial risk of inmate-on-inmate violence but disregarded that risk and failed to take reasonable measures to minimize it.

(R. 19 at 6). In other words, counsel for Defendant/Appellant did not dispute that it was clearly established law that "jail officials … can be held liable if they knew of a substantial risk of inmate-on-inmate violence but disregarded that risk and failed to take reasonable measures to minimize it" – they simply argued that the pleadings did not allege such a constitutional violation under the facts as alleged.

When the trial court acknowledged that Defendants had conceded that the applicable constitutional principal was clearly established, Defendants could have directly appealed the denial of qualified immunity under the collateral order doctrine at that time, but they chose not to so. While that may not constitute a

legal waiver *per se*, defense counsel's failure to appeal on that issue at the first opportunity is worthy of note, because if they truly believe their position is correct, why not raise it sooner and protect their clients from the burdens of two years of litigation – which is one of the purposes of qualified immunity in the first place?

The trial court having already ruled that the law was clearly established even under the skeletal facts stated in the Complaint, which was subsequently amended multiple times as supporting facts were elicited through discovery – resulting in Plaintiffs' voluntary dismissal of multiple Defendants and strengthening the allegations against others – the issue on summary judgment was whether, viewing the facts adduced through discovery in the light most favorable to Plaintiffs, a jury could find that the remaining Defendants violated that law.  The trial court denied that motion as to Defendant/Appellee Keyvon Sellers, who admittedly had actual knowledge – and whose admission is confirmed by conversations recorded on the jail's security video – that Jayvon Hatchett had just been arrested for stabbing a white man because he said he wanted to kill a white person, yet Sellers refused to do anything in the way of passing that information up his chain-of-command so that appropriate precautions could be taken for the protection of white inmates.[7]

---

[7] The same information that was conveyed to Sellers by Hatchett and the transporting officer was also given to a jail nurse who screened Hatchett for Covid – which was also recorded by security video – and the trial court also denied the screening nurse's motion for summary judgment.  However, the denial of summary

The trial court having correctly ruled – twice now – that the law applicable to this case is clearly established, and having ruled on summary judgment that there is a genuine issue of material fact as to whether clearly established law is violated, Appellant is not entitled to an interlocutory appeal on the underlying factual issues, which are not ripe for appeal until there is a final judgment after the trial of the case which may moot that issue. The trial court having correctly ruled that Appellant is not entitled to judgment as a matter of law on either factual or legal grounds, this Court is bound to affirm the decision of the trial court and remand this case to be tried with the rest of the case that is pending below against the other Defendants who were denied summary judgment.

## ARGUMENT AND CITATION OF AUTHORITY

**A.** **Reasonable jurors could find that Officer Sellers was deliberately indifferent to a known risk of harm**

It has long been a clearly established rule that "prison officials have a duty … to protect prisoners from violence at the hand of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). The constitutional standard for establishing the violation of that right is "deliberate indifference" to a known risk of serious harm to an inmate, which applies to both pretrial detainees (under the Fourteenth

---

judgment to the nurse was not subject to direct appeal under the collateral order doctrine because she was employed by a private contractor not entitled to claim qualified immunity, and her counsel did not assert it in any event.

Amendment) and convicted prisoners (under the Eighth Amendment). *Lancaster v. Monroe County*, 116 F. 3d 1419 (11th Cir. 1997); *Hill v. Dekalb Regional Youth Detention Ctr.,* 40 F. 3d 1176, n. 19 (11th Cir. 1994).

"Deliberate indifference" means there is "a substantial risk of serious harm, of which the official is subjectively aware, … and the official does not respond reasonably to the risk." *Marsh v. Butler County, Ala.*, 268 F. 3d 1014, 1028 (11th Cir. 2001) (*en banc*) (quoting *Farmer*, 511 U.S. at 844) (internal punctuation omitted). That standard is clearly met by the evidence in this case.

While Plaintiffs submit that *Marsh*, being a full court decision based on the Supreme Court's language in *Farmer*, is the Eleventh Circuit case which best articulates the deliberate indifference standard in inmate assault case, other cases have paraphrased the standard with more restrictive wording. In *McElligot v. Foley*, 182 F. 3d 1248 (11th Cir. 1999), for instance, the court stated that deliberate indifference has three components: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is *more than negligence.*"[8] (emphasis added). Plaintiffs submit that the "more than negligence" gloss added

---

[8] Decisions in other contexts, such as denial of medical care, have gone as far as to require "conduct that is more than *gross* negligence," but the only way to construe such language consistently with *Farmer* is to view it an apparent redundancy to emphasis the point that neither simple nor gross negligence, without more, rise to the level of deliberate indifference – which is already implicit in the first two components: i.e., a known risk of harm and the disregard of that risk.

by *McElligot* should *not* be read as imposing an additional subjective requirement that the defendant not only have actual knowledge of a risk of serious harm, but also that he or she act with subjective intent to cause harm. Such an interpretation would be inconsistent with both *Farmer* and this Court's *en banc* decision in *Marsh*, which only requires subjective knowledge of the risk itself and implies that 'disregard of that risk' is an objective fact that can be inferred from the evidence. *Farmer*, 511 U.S. at 833; *Marsh*, 268 F. 3d at 1028 (quoting *Farmer*, 511 U.S. at 844)). After all, the standard is one of 'indifference,' not ill will, and 'deliberate indifference' means knowingly ignoring a risk irrespective of whether a bad outcome is intended.

In *Marsh*, the full Eleventh Circuit defined "deliberate indifference" as where there is "a substantial risk of serious harm, of which the official is subjectively aware, … and the official does not respond reasonably to the risk." The element that "the official does not respond reasonably to the risk" does not equate to negligence because the risk is known, whereas negligence is based on what a reasonable person *should* have known. Accordingly, the failure to respond reasonably to a known risk of serious harm is not inconsistent with *McElligot*'s requirement of conduct that is "more than negligence," although the *en banc* articulation of the *Farmer* standard in *Marsh* is clearer and less confusing.

While Plaintiffs/Appellees relied primarily upon *Marsh* in their summary judgment briefing, the trial court conducted its own research and found other prior case law that was even more on point and clearly established the law under more similar fact patterns. *See, e.g., Bowen v. Warden,* 826 F.3d 1312 (11th Cir. 2016).

> A plaintiff can establish a substantial risk of serious harm by showing that jail officers knew of a specific threat against an inmate. But a specific threat is not necessary if there is enough other information to show a specific risk of serious harm. **In *Bowen v. Warden*, for example, there was no specific threat before an inmate killed his cellmate, but the officers had plenty of information to suggest that the attacker posed a specific risk of serious harm to any potential cellmate**.

(R. 198 at 13-14) (emphasis added). That rule squarely applies here, and particularly to "any potential cellmate" who happens to be white.

Unlike *Marsh*, "this is not a general conditions of confinement case.[9] **Rather, it is a case about the degree of risk posed *by* a specific inmate**." (R. 198 at 13, fn. 5) (emphases added). Either way, deliberate indifference to a known risk of serious harm – irrespective of whether the risk of harm is a known threat *to*

---

[9] Even though the trial court is correct that the articulation of the deliberate indifference standard in *Marsh* was in the context of a conditions of confinement case, it should be noted that in *Hope v. Pelzer*, 536 U.S. 730 (2002), the Supreme Court saw fit to rely on a prior conditions containing language that prohibited the practice of punishing inmates by handcuffing them to fixed objects as part of a laundry list of unconstitutional conditions, and that precedent – though in a different context – helped to clearly establish Eighth Amendment law governing the use of force against convicted prisoners. 536 U.S. at 737 (citing *Gates v. Collier,* 501 F.2d 1291 (5th Cir. 1974)). The undersigned counsel was the winning lawyer in *Hope*.

a particular inmate or a known threat posed *by* one – is a Fourteenth Amendment violation.

"Here, although there is no evidence that Hatchett made any specific threats of violence to anyone at the Jail during his incarceration, a reasonable jury could conclude that Sellers and Braxton both had enough information to infer that Hatchett posed a substantial risk of serious harm to white inmates…" (*Id.* at 15). Officer Sellers admits he was told what Hatchett had done; he simply argues that he did not believe Hatchett was going to hurt anybody else and thus nobody needed to be warned.  In other words, he chose not to act on information from which reasonable jurors could infer a risk of serious harm – one which eventually came to fruition.  Even if the law required that a defendant act with subjective bad faith and not merely indifference, there would still be a jury question as to Sellers' actual state of mind.  Otherwise, deliberate indifference could only be proven with a confession of culpability, meaning that a defendant would only have to claim ignorance of the risk to avoid liability, when it is axiomatic that intent – even in the criminal context where life and liberty are on the line – can be inferred by extrinsic evidence, irrespective of what the defendant says he believed.

Given that Sellers was told by both a police officer and the offender himself that the offender wanted to kill a white person and had in fact acted on that intent, it is preposterous to argue that he is not liable as a matter of law simply because of

his self-serving claims that he did not believe Hatchett posed a threat which turned out to be real.  Indeed, the choice to believe or disbelieve what one has been told is tantamount to deliberate indifference to that information.  Regardless of how the standard is articulated, the deliberate indifference of Officer Sellers – who clearly knew about a risk but failed to respond to it, reasonably or otherwise – is a classic jury question.

## B.    Because Sellers' conduct violated clearly established constitutional law, he is not entitled to qualified immunity. [10]

Once a constitutional violation is established, Plaintiffs must also overcome the defense of qualified immunity, which provides that the Defendant  cannot be personally liable unless his or her conduct violated clearly established constitutional norms.  *Hope v. Pelzer*, 536 U.S. 730 (2002); *Tolan v. Cotton*, 572 U.S. 650 (2014).  In determining whether an individual official is entitled to qualified immunity, there are two inquiries involved:

---

[10] While Appellees are addressing merits of the appeal because they believe the trial court ruling was correct, an argument can be made that this is not a proper case for an interlocutory appeal.  Not every denial of immunity is a collateral order warranting a direct interlocutory appeal.  *Mitchell v. Forsyth*, 472 U.S. 511 (1985). To the extent that qualified immunity can be determined as a purely legal question that does not depend upon the sufficiency of the evidence, an interlocutory order denying immunity can be reviewed on a direct appeal.  However, if the immunity determination involves mixed questions of law and fact, the collateral order doctrine does not apply.  *Johnson v. Jones*, 515 U.S. 304 (1995).  Accordingly, the Court could choose to dismiss this appeal for lack of jurisdiction since the question of whether the law is clearly established turns upon hotly disputed facts.

(1)  The Court must determine whether the facts alleged, taken in the light most favorable to the plaintiff, show that the official's conduct violated a constitutional right; and

(2) The Court must determine whether the right allegedly violated was clearly established under the law which existed at the time of the alleged violation.

*Saucier v. Katz*, 533 U.S. 194 (2001), *as modified by Pearson v. Callahan*, 555 U.S. 223 (2009).

With respect to the first inquiry, there is clearly a jury question as to the existence of a constitutional violation for the reasons discussed in the previous section.  In the words of the trial court,

> Here, although there is no evidence that Hatchett made any specific threats of violence to anyone at the Jail during his incarceration, **a reasonable jury could conclude that Sellers and Braxton both had enough information to infer that Hatchett posed a substantial risk of serious harm to white inmates** because of the nature of his underlying crime. Construing the evidence in the light most favorable to Plaintiffs and drawing all reasonable inferences in their favor, Sellers and Braxton knew that (1) Hatchett violently attacked the AutoZone clerk by stabbing him repeatedly; (2) Hatchett attacked the clerk without provocation, targeting him solely because he was white; (3) the only reason Hatchett stabbed the clerk was because he was white; (4) Hatchett's sole motivation for his attack of the clerk was his irrational response to the racially charged atmosphere connected to the widespread publicity of whites killing blacks. **Despite this knowledge, neither Sellers nor Braxton passed the critical information to the Jail officials who were responsible for determining if Hatchett posed a safety risk to others.**

**Based on this evidence, a jury could conclude that any reasonable corrections officer or intake nurse would have known that Hatchett posed a substantial risk of serious harm to a white detainee.** Braxton and Sellers seem to contend that they did not draw any inference of a substantial risk from the information they had, but a jury could conclude otherwise. *See Farmer*, 511 U.S. at 842 ("Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence[.]"). Finally, **a factfinder could conclude that doing nothing to make sure that the information about Hatchett's violent, racially motivated attack was conveyed to a classification officer or mental health evaluator constituted deliberate indifference to the risk.**

(R. 198 at 15-16) (emphasis added).

As for the second inquiry of the two-pronged qualified immunity analysis, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). All that is required is that "*in the light of* pre-existing law, the unlawfulness must be *apparent*." *Id.* (emphasis added). "[T]he salient question … is whether the state of the law [at the time of the alleged conduct] gave [officers] fair warning that their alleged [conduct] was unconstitutional." *Hope*, 536 U.S. at 741. One way to show 'fair warning' is by pointing to a prior case with similar facts, but that is not the only way to do so. *Id.*

Factually similar precedent is not required if "a general constitutional rule already identified by the decisional law" is articulated with sufficient clarity that it

is not dependent upon the peculiar facts of the case from which it arose. *Hope,* 536 U.S. at 741.

> [I]f some authoritative judicial decision decides a case by determining that "X Conduct" is unconstitutional without tying that determination to a particularized set of facts, the decision on "X Conduct"can be read as having clearly established a constitutional principle: put differently, the precise facts surrounding "X Conduct"are immaterial to the violation. **These judicial decisions can control "with obvious clarity" a wide variety of later factual circumstances.**"

*Vinyard v. Wilson*, 311 F.3d 1340, 1351 (11th Cir. 2002) (emphasis added).

Appellant's reliance upon *Mullinex v. Luna*, 577 U.S. ___, 136 S. Ct. 305 (2015) is misplaced. That was a use of force case, evaluated under the objective reasonableness standard of the Fourth Amendment, where a greater degree of factual specificity is required to evaluate whether the precedent relied upon by the plaintiff is materially similar to the case at bar. Because Fourth Amendment cases are fact-specific and turn on the reasonableness of a given use of force in an infinite variety of circumstances, factually similar precedent is important in understanding the boundaries between reasonable and unreasonable force. Without such guideposts, it is more difficult for an officer to determine whether his or her conduct is reasonable or not – which is not as important in deliberate indifference cases under the Eighth and Fourteenth Amendments because of the subjective element of such claims, where broader statements of principle are sufficient to clarify the law in cases since actual knowledge of a risk of harm is

already built into the constitutional standard. *See Johnson v. Breeden,* 280 F. 3d

1308 (11th Cir. 2002).

> In other words, a defendant officer could use force in making an arrest that is later judged to be excessive enough that it violates the Fourth Amendment, but if prior decisions did not clearly establish that the use of that amount of force in those circumstances was constitutionally excessive, the defendant officer would be entitled to qualified immunity… It is different with claims arising from the infliction of excessive force on a prisoner in violation of the Eighth Amendment…[11]

> So, where this type of constitutional violation is established there is no room for qualified immunity. It is not just that this constitutional tort involves a subjective element, it is that the subjective element required to establish it is so extreme that every conceivable set of circumstances in which this constitutional violation occurs is clearly established to be a violation of the Constitution…

280 F. 3d at 1321-22.

In an objective reasonableness case such as *Mullinex, supra,* there is an

argument that the law must be clearly established in the context of a specific fact

pattern that has been litigated before – at least under circumstances that are

sufficiently similar to put officers on notice that the situation confronting them

does not justify the level of force at issue. On the other hand, in the deliberate

indifference scenario, subjective knowledge of a serious threat is a lot less fact

specific:  a reasonable officer would either recognize the threat or not, and it does

---

[11] By extension, it is logical that this distinction also applies to claims arising from deliberate indifference under the Eighth and Fourteenth Amendments, which also have a subjective element.

not matter if the risk is one of violence, medical neglect, or some other condition that is not only apparent, but is in fact *known* to the defendant, yet the defendant chooses not to act on it.

As the Court held at the pleadings stage under the factual circumstances alleged in this case, it is undisputed that the following principle of constitutional law is clearly established: "jail officials have a duty to protect inmates from violence at the hands of other inmates and that officials can be held liable if they knew of a substantial risk of inmate-on-inmate violence but disregarded that risk and failed to take reasonable measures to minimize it." (R. 19 at 6). Under Plaintiffs' view of the facts, a reasonable jail officer would have known that Seller's conduct violated that clearly established principle. Accordingly, Sellers had fair warning of what the law required and is not entitled to qualified immunity.

## CONCLUSION

For the reasons set forth in the foregoing argument of law and citation of authority, Appellees respectfully request that the district court order be affirmed and the case remanded for trial.

Respectfully submitted this 22nd day of February, 2023.

*/s/ Craig T. Jones*
CRAIG T. JONES
Georgia Bar No. 399476
Counsel for Appellees

CRAIG T. JONES, P.C.
Post Office Box 129
Washington, Georgia 30673
(678) 643-0062
craigthomasjones@outlook.com

## CERTIFICATE OF COMPLIANCE

I certify that this Brief of Appellee complies with the 13,000-word type-volume limitation set forth in Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure, as modified by 11th Cir. Rule 32-4. This Brief contains 6,189 words, including footnotes, and was prepared using Times New Roman 14-point typeface.

*/s/ Craig T. Jones*
Craig T. Jones
Ga. Bar No. 399476
Attorney for Appellees

## CERTIFICATE OF SERVICE

I hereby certify that on this date I served the foregoing Brief of Appellees upon Appellant's counsel of record via electronic filing and First Class U.S. Mail.

Respectfully submitted this 22nd day of February, 2023.

*/s/ Craig T. Jones*
CRAIG T. JONES
Georgia Bar No. 399476
Counsel for Appellees